IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIM. NOs. JKB-09-478 |
| | | JKB-15-408 |
| SAVINO BRAXTON, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**[*]

Now pending before the Court is Defendant Savino Braxton's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF Nos. 309, 315.)[1] Braxton was sentenced to 240 months' imprisonment for Possession with Intent to Distribute Heroin (ECF No. 190), and a consecutive 6 months for Summary Contempt of Court (Crim. No. JKB-15-408, ECF No. 3). He has served approximately 8 years and is currently incarcerated at FCI Danbury. He now seeks a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in light of the COVID-19 pandemic. No hearing is necessary. *See* Local Rules 105.6, 207 (D. Md. 2018). For the reasons set forth below, Braxton's motion will be granted in part, and his total sentence will be reduced to 168 months' incarceration.

*I.   Background*

The procedural history and facts set forth in the Court's prior Memorandum Opinions (ECF Nos. 181, 307) are incorporated by reference and repeated as necessary to provide context and to

---

[*] This Opinion has been redacted, omitting confidential medical information which the Defendant has not previously made public in his filings. (*See* ECF No. 309, at 2–5.)

[1] Unless otherwise specified, citations to docket numbers refer to documents filed in *U.S. v. Braxton*, Crim. No. JKB-09-478.

1

resolve the pending motion. In September of 2009, Braxton was indicted for possession with intent to distribute more than a kilogram of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841. (ECF No. 8.) Following arraignment, Braxton fled, and he was subsequently re-arrested in 2012. (ECF No. 90, at 5:4–5:10.) On February 11, 2013, Braxton pleaded guilty to possession with intent to distribute more than a kilogram of heroin before Judge Richard D. Bennett. (ECF Nos. 62, 63.) At sentencing, after thoroughly considering all relevant factors including the factors set forth in 18 U.S.C. § 3553(a), Judge Bennett imposed a sentence of 138 months' incarceration to be followed by five years of supervised release. (ECF No. 90, at 44:7–49:2.) That sentence specifically accounted for both Braxton's criminal history and his flight from the authorities. (*Id.*)

Braxton subsequently appealed, and the Fourth Circuit vacated Braxton's guilty plea. (ECF No. 95.) Following remand, the government filed a notice of enhanced sentence pursuant to 21 U.S.C. § 851, subjecting Braxton to a potential mandatory minimum of 240 months of imprisonment. (ECF No. 100.) The matter was reassigned to the undersigned, and Braxton elected to proceed to trial and to represent himself. (ECF No 115.) In July of 2015, Braxton was found guilty. (ECF No. 158.) Additionally, the Court convicted Braxton of summary contempt for his conduct during trial. (Crim. No. JKB-15-408, ECF No. 1.)

At sentencing on November 3, 2015, the undersigned considered the § 3553(a) factors and concluded that the 138-month sentence imposed by Judge Bennett for the heroin offense was "proportional and appropriate given all the circumstances." (ECF No. 203, at 62:2–62:10.) However, due to the § 851 notice, the Court was required to impose the mandatory minimum of 240 months, even though the Court deemed that sentence to be longer than necessary to serve the interests of justice. (*Id.* at 62:11–62:15.) The Court also imposed a 6-month sentence for summary

contempt, to be served consecutively.  (*Id.* at 62:16–63:2.)  Based on this combined sentence, Braxton's projected release date is in the year 2030.  (ECF No. 317-3.)

In early 2020, the COVID-19 pandemic began to spread throughout the United States.  *See In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Case 1:00-mc-00308, Standing Order 2020-05 (D. Md. Mar. 20, 2020).  On March 30, 2020, Braxton moved for immediate release in light of the pandemic, citing his age and pre-existing health conditions.  (ECF No. 300.)  The Court denied the motion, finding that Braxton had failed plead a jurisdictional basis for relief, and Braxton appealed.  (ECF Nos. 301, 302.)

 The virus proceeded to spread through FCI Danbury, and in mid-April, Braxton tested positive for COVID-19.  [Confidential Medical Information Redacted].

Braxton petitioned the warden of his institution for a sentence reduction on April 26, and the warden denied the request.  (ECF No. 317-2.)  Braxton then made a second motion for sentence reduction pursuant to § 3582(c)(1)(A)(i), arguing that the combination of his medical condition and the ongoing pandemic constitutes "extraordinary and compelling reasons" for the Court to reduce his sentence.  (ECF Nos. 309, 315, 317.)  The government opposed the motion arguing both that Braxton had failed to establish his eligibility for a sentence reduction, and that the § 3553(a) factors counsel against immediate release.  (ECF No. 319.)  Braxton has voluntarily dismissed his appeal of the Court's denial of his first motion (ECF No. 326), and his second motion is now ripe.

## II.     Analysis

Braxton has moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).  Under this Section, a district court may modify a convicted defendant's sentence when "extraordinary and compelling reasons warrant such a reduction" and the court has "consider[ed] the factors set forth in section 3553(a) to the extent that they are applicable."  *Id.*  A defendant may only move

for sentence reduction under § 3582(c)(1)(A) after he or she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*  Braxton filed a request with the warden of his institution on April 26, 2020, and the government does not dispute that he has satisfied the procedural requirements of § 3582(c)(1)(A).  Therefore, the Court must determine: (1) whether "extraordinary and compelling reasons warrant[] a reduction"; and (2) whether a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a).

### A. *Extraordinary and Compelling Reasons*

Under 28 U.S.C. § 994(t), the United States Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  The Commission has stated that "extraordinary and compelling reasons" exist where: (1) a defendant has a terminal or serious medical condition; (2) a defendant with deteriorating health is at least 65 years old and has served ten years or 75% of his term of imprisonment; (3) certain family circumstances arise in which a defendant must serve as a caregiver for minor children or a partner; or (4) the Bureau of Prisons ("BOP") determines other circumstances create "extraordinary and compelling reasons" for sentence reduction.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A)–(D).

This mandate and policy statement, however, predate the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), "which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when B[O]P finds they are not appropriate."  *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019).  This Court and many others have determined that under the First Step Act, "BOP is no

4

longer the exclusive arbiter of what constitutes other 'extraordinary and compelling reasons,'" and that courts may now "independently determine what constitutes other 'extraordinary and compelling reasons' for compassionate release[.]" *United States v. Richardson*, Crim. No. JKB-09-0288, 2020 WL 3267989, at *2 (D. Md. June 17, 2020). This Court likewise has held that "medical conditions which make a defendant uniquely susceptible to complications from COVID-19 create 'extraordinary and compelling reasons' to grant compassionate release pursuant to § 3582(c)(1)(A)." *Id.* *See also United States v. Lewin*, Crim. No. SAG-15-198, 2020 WL 3469516, at *3 (D. Md. June 25, 2020) (A defendant can establish extraordinary and compelling reasons by demonstrating that he "(1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released.").

Braxton has identified several medical conditions which he claims heighten his risk of suffering from severe illness from COVID-19: [Confidential Medical Information Redacted].[2]

Though it is undoubtedly a positive sign that Braxton appears to have recovered following his positive COVID-19 test in April, this recovery is not firm evidence that Braxton is no longer at a heightened risk of severe illness. As of this writing, it remains unknown both (1) to what degree individuals who recover from COVID-19 benefit from long term immunity to the various strains of the virus, and (2) what sort of future complications an individual such as Braxton might suffer following an apparent recovery. *See, e.g.*, Interim Guidelines for COVID-19 Antibody Testing, CTRS. FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/lab/resources/antibody-tests-guidelines.html (last accessed August 10, 2020) ("[I]t remains uncertain to what degree and for how long individuals with antibodies (neutralizing or total) are

---

[2] [Confidential Medical Information Redacted].

protected against reinfection with SARS-CoV-2[.]"). Judge Grimm, Judge Hollander, and Judge Chuang of this District have all found that medical conditions which increase an inmate's susceptibility to severe illness may constitute "extraordinary and compelling reasons" even if the inmate has already contracted and apparently recovered from COVID-19. *See, e.g.*, *United States v. Williams*, Crim. No. PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020); *United States v. Kess*, Crim. No. ELH-14-480, 2020 WL 3268093 (D. Md. June 17, 2020); *United States v. Fletcher*, Crim. No. TDC-05-0179-01, 2020 WL 3972142 (D. Md. July 13, 2020). Additionally, [Confidential Medical Information Redacted].

Separately, contracting COVID-19 "increased the severity of [Braxton's] sentence beyond what was originally anticipated," and itself weighs in favor of a finding of extraordinary and compelling reasons. *United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020). Further, though conditions are much better at FCI Danbury than they were in April, the Court notes that COVID-19 does not appear to be altogether absent from the facility; as of this writing, the BOP website reports that there are currently one prisoner and two staff at FCI Danbury who have tested positive for the virus and not yet recovered. *See* COVID-19 Cases, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed August 10, 2020).

In sum, though Braxton is perhaps not among the group of inmates with the very highest risk of severe illness or death, the evidence before the Court indicates that he is still at a substantially elevated risk from COVID-19. Taking into account both his vulnerability and the fact that he has already contracted the virus, and considering the totality of the circumstances, the Court concludes that Braxton has presented extraordinary and compelling reasons for sentence reduction.

### B. *Section 3553(a) Factors*

Having determined that Braxton has presented "extraordinary and compelling reasons" supporting sentence reduction, the Court must still consider what sentence is appropriate based on the § 3553(a) factors. The Court has reviewed the § 3553(a) factors and finds that they advocate a total sentence of 168 months—162 months for the heroin conviction, to be followed by a consecutive 6 months for contempt. This accords with Judge Bennett's convincing analysis in the vacated 2013 sentencing hearing, while accounting for the fact that having gone to trial and spent years challenging his culpability, Braxton can no longer be credited with accepting responsibility.

First, considering the "history and characteristics" of the Defendant, the Court finds that Braxton is a recidivist offender with a long history of drug crimes. However, he is also now a 63-year-old recidivist offender, who has shown the ability to prioritize his education and, for periods at least, turn his life around. (ECF No. 90, at 47:17–47:24). Though Braxton was convicted of violent offenses in the 1970s, those convictions are quite dated, and he has not been convicted of violent conduct in recent decades. Further, Braxton reports and the government does not contest that Braxton has not incurred any disciplinary infractions during this incarceration. (ECF No. 323, at 12.) As for the "nature and circumstances" of the offense, Braxton was convicted of possessing substantial quantities of heroin with the intent to distribute. There is nothing in the record that indicates Braxton was involved in violence or that he possessed weapons in relation to this charge. Considering the "seriousness of the offense," the Court finds this case is by definition serious by virtue of the quantity of drugs involved and the societal harm attendant to drug distribution in this community. However, as Judge Bennett noted, there is no evidence that Braxton was a particularly major player in the drug trade. (*Id*. at 47:4–47:7.)

As for the "need for deterrence," Braxton has numerous prior convictions. Accordingly, it is only rational to conclude that a substantial penalty is necessary to dissuade him from future offenses. However, for a person of Braxton's age and ill health, any sentence of over a decade is bound to have a very substantial deterrent effect, particularly given Braxton's traumatic experience of contracting COVID-19 during his current incarceration. Braxton has every reason to anticipate that another conviction could cause him to spend his final years of life incarcerated, and there is little reason to think a sentence of 20 years would deter him more forcefully than a 14 year sentence; either way he will know his next chance is likely to be his last. The "need to protect the public" is a significant factor because of the quantity of drugs involved and Braxton's criminal record. However, Braxton's age and ill health make recidivism far less likely than it would be for a younger and healthier man. *See, e.g.*, U.S. Sent. Comm., The Effects of Aging on Recidivism Among Federal Offenders, 2017, at 3 ("Older offenders were substantially less likely than younger offenders to recidivate following release . . . 13.4 percent of offenders age 65 or older at the time of release were rearrested[.]"). Though it is impossible to be certain, the Court believes that Braxton poses little danger to the public at this point.[3]

Regarding the "need to avoid unwarranted sentencing disparities" among defendants with similar records and culpability, the Court has carefully considered the penalties imposed on others with similar records in similar and dissimilar cases. The Court notes that a 168-month sentence would be typical for an individual with Braxton's record and culpability, and that the 246-month sentence he is currently serving is certainly on the higher end of the range. Training and treatment is not a significant factor.

---

[3] The Court also makes this determination in regard to U.S.S.G. § 1B1.13, to the extent a separate determination is necessary.

Taking under advisement the Federal Sentencing Guidelines, the Court finds that Braxton's criminal history places him in Category III, for the reasons explained in the Presentence Investigation Report (ECF No. 175) and at sentencing in 2015 (ECF No. 203, at 49:12–51:8). However, where the Court found at sentencing that Braxton's total offense level for the heroin conviction was level 30, the Court now finds that the applicable level is level 32. This is because Braxton is no longer entitled to the two-level downward adjustment for acceptance of responsibility that the Court applied in 2015. At sentencing, the Court adopted the Presentence Investigation Report's finding that Braxton's base offense level was 30 and that he was subject to a two-level upward adjustment for obstruction of justice. (*Id.*) But the Court also credited Braxton with a two-level downward adjustment for acceptance of responsibility—"straining the provision to the breaking point" to find that Braxton had taken responsibility even though he had opted to go to trial. (*Id.* at 49:12–49:19.) In the years since sentencing, Braxton has brought a series of collateral challenges accusing his attorneys of incompetence and perjury, the prosecution of misconduct and fraud, and various other individuals of being at fault for the situation in which Braxton placed himself. (*See* ECF Nos. 232, 239, 262, 264; *see also Braxton v. Purcell*, Civ. No. GLR-15-2828; *Braxton v. Tuminelli*, Civ. No. JKB-18-508; *Braxton v. Simon, et al.*, Civ. No. JKB-20-94.) As a result, the Court can no longer reasonably credit Braxton with accepting responsibility. The final offense level of 32 and criminal history of Category III results in a guidelines range of 151–188 months for the heroin conviction.

As explained, consideration of all relevant factors, including the § 3553(a) factors, causes the Court to conclude that the sentence that is sufficient but not more than necessary is a total 168 months of incarceration—the 138 months Judge Bennett initially imposed for the heroin conviction, plus an additional 24 months to account for Braxton's rejection of responsibility,

followed by a consecutive 6 months for contempt.  Given this determination, immediate release is not appropriate.

However, though both Braxton and the government treat the decision facing the Court as a binary between immediate release and leaving the existing sentence intact, the Court rejects this constrictive reading of its authority under § 3582(c)(1)(A).  The statutory text empowers the Court to "reduce the term of imprisonment," upon a finding of "extraordinary and compelling reasons."  It does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its evaluation of the appropriate sentence once it finds "extraordinary and compelling reasons."  Numerous district courts in both this Circuit and others have found that a court "need not choose between immediate, unconditional release or no relief at all," and have accordingly granted sentence reductions that do not result in immediate release. *United States v. Marks*, Crim No. 03-6033L, 2020 WL 1908911, at *17 (W.D.N.Y. Apr. 20, 2020) (reducing sentence from 40 years to 20 years); *see also, e.g., United States v. Arey*, Crim. No. 5:05-00029, 2020 WL 2464796 (W.D. Va. May 13, 2020) (reducing sentence but denying immediate release); *United States v. Day*, Crim. No. AJT-05-460, 2020 WL 4251803, at *12 (E.D. Va. July 23, 2020) (same).

Under most circumstances, the Court would treat the § 3582(c)(1)(A) inquiry as the binary question posed by the parties.  But this case involves unique circumstances including a highly unusual procedural history wherein Judge Bennett's proportionate sentence was vacated and a much longer mandatory minimum sentence imposed.  The extraordinary and compelling circumstances presented by the pandemic have empowered the Court to revisit the sentence it was forced to impose in 2015 and freed the Court from the restrictive mandatory minimum then required.  In this unique instance, instead of granting immediate release or denying relief

altogether, the Court will exercise its discretionary authority to reduce Braxton's sentence for the heroin conviction to 162 months, and his total sentence to a sentence of 168 months' imprisonment. Such a sentence is "sufficient, but not greater than necessary" to comply with the purposes of incarceration. 18 U.S.C. § 3553(a). To be clear, even if the guidelines were computed differently in this case, the sentence would nonetheless be reduced to 168 months. All other terms of the sentence imposed not altered by this memorandum remain in full force and effect and will be reflected in the amended judgment and commitment order.

### III. *Conclusion*

For the foregoing reasons, an Order shall enter granting in part Braxton's Motion for Compassionate Release and reducing Braxton's total sentence to 168 months.

DATED this 11th day of August, 2020.

BY THE COURT:

/s/

James K. Bredar
Chief Judge